**ORINO v. UNITED STATES.**
No. 46063.

Court of Claims.
June 1, 1948.

Ralph B. Potts, of Seattle, Wash., for plaintiff.

John B. Miller, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, HOWELL, MADDEN and WHITAKER, Judges.

LITTLETON, Judge.

Plaintiff seeks to recover on three separate items of claim arising out of a contract for the construction of an irrigation canal on the Deschutes River near the city of Bend, Oregon.

In the bidding documents the contract work was described as "Earth Work and Structures Station 28 + 24 to Station 110 + 00 North Unit Main Canal." The work was divisible into two parts, namely, the portion consisting of the approach channel and headwork structures at the upstream or river end of the canal to station 28 + 24 and the portion consisting principally of the unlined canal downstream to station 110 + 00.

The headworks, at the upstream or river end of the canal, consisted primarily of all excavation of rock and common material upstream in the direction of the Deschutes River from a point designated as station 32 + 63.94 required for the construction of the headworks, including an approach channel to the trash rack and fish screen portion of the headworks structures, the installation of concrete structures to contain the trash rack, fish screens, and gate, installation of these and other specified appurtenances, and the construction of a concrete-lined channel downstream from such structures to station 32 + 63.94.

The work in the canal downstream from station 32 + 63.94 to station 110 + 00 consisted principally of the excavation of rock and common material necessary to the construction of an unlined canal, varying in width at the bottom from 20 to 60 feet, according to the nature of the ground.

Payment for the contract work, except with respect to a temporary cofferdam for unwatering the foundation for the headworks, was not on a lump-sum basis, but was on the basis of the quantities of work

or material supplied, at specified unit prices. The greater part of the material, including sand, gravel, and cement for the concrete, was to be supplied by defendant. The contract work was completed within the required time and was accepted by defendant.

For the work performed, other than that comprising the basis of the three items of claim involved in the present suit, the contractor was paid the agreed unit prices. Likewise, for the work comprising plaintiff's first item of claim, namely, certain subaqueous rock excavation performed upstream from station 28 + 24, to wit, between stations 28 + 24 shown in the contract and a new station designated as 27 + 24, which the contractor was required to perform in order to fully and completely connect the full width of the headworks portion of the canal with the Deschutes River, the contractor was paid, under his protest, the unit price of $1.25 per cubic yard, fixed in the bid schedule for rock excavation for headworks. Plaintiff seeks to be paid the reasonable cost and price for this work, rather than the aforesaid unit price, which the contractor contended, and which the executrix now contends, was inapplicable to the work in question.

Plaintiff's second and third items of claim involve, respectively, certain rock excavation beyond the neat lines of the side walls of the unlined portion of the canal, and the placing of certain concrete below the neat lines of the foundation subgrade in a portion of the headworks section of the canal. For these two items of work the contractor was paid nothing, notwithstanding his conception that they were part of the contract work required under the specifications, for which an agreed unit price of 80 cents per cubic yard, and $15 per cubic yard, respectively, was provided in the bid schedule.

### Item 1. Claim for $25,704 for Extra Subaqueous Rock Excavation

The substance of plaintiff's complaint with respect to this item of claim is that the contractor was compelled to perform a substantial amount of subaqueous excavation outside the limits of the canal project as fixed by the contract documents, and

that for such work plaintiff is entitled to be paid a fair and reasonable price for this work which is substantially more than the unit price fixed by the contract for dry rock excavation in the headworks section of the canal. The facts are fully set forth in findings 5 to 17, both inclusive, to which reference will be made in discussing this item of claim, in lieu of a detailed restatement of the facts here.

The excavation for which plaintiff seeks this additional compensation was performed entirely upstream from station 28 + 24, the station point indicated both in the specifications and on the face of the various contract documents as the upstream extremity of the project upon which the contract work was to be performed (finding 5).

Paragraph 17 of the specifications, entitled "The requirement," reads: 17. The requirement.—It is required that there be constructed and completed, in accordance with these specifications and the drawings listed in paragraph 20 hereof, the earthwork and structures from station 28 + 24 to station 110 + 00, North Unit main canal, Deschutes project, Oregon. The work is located at Bend, Oregon, as shown on the location map.

The stations there indicated are at intervals of 100 feet. The figures on the plans after the station number indicate the number of feet beyond the numbered station. The total distance from station 110 +00 (the downstream end) to station 28 + 24 (the upstream end) was 8,176 feet. The unlined channel extended from station 110 + 00 to station 32 + 63.94. The concrete-lined channel and concrete headworks extended from the latter station to station 28 + 58. Station 28 + 24, 34 feet upstream from the upstream extremity of the concrete headworks, was the point of intersection of the center line of the canal and the bank of the Deschutes River, the source from which water was to be diverted into the canal. This 34-foot section was an approach channel to the concrete headworks. The work in this 34-foot portion of the canal consisted entirely of excavation of rock and common material to the lines and grades specified.

Because the end of the canal above the headworks to station 28 + 24 approached the river at an acute angle, the excavation of the canal to grade and to its full width of 50 feet at station 28 + 24 brought a part of the work out beyond the water line of the river (and involved to some extent excavation of material from below the surface of the river) on that half of the width of the canal lying nearest the river. Because of this same physical circumstance the excavation of the canal to station 28 + 24 did not bring the other half of the canal width up to the water line of the river. This fact was fairly disclosed on the drawings listed in paragraph 20 of the specifications (see findings 6 and 8). The work called for by the contract between stations 28 + 24 to station 110 + 00 was designated as the "Schedule" of work to be performed.

Notwithstanding the designation of the contract work as "earthwork and structures from station 28 + 24 to station 110 + 00," in paragraph 17 of the specifications, as well as in the heading of the schedule of units and prices, the contractor was required by defendant to excavate the canal a further distance of 100 feet upstream, not indicated in the contract documents, on the land side from station 28 + 24, and to where the bottom of the channel met the bed of the river within a radius of 100 feet from station 28 + 24 swung outward from the land side of the canal.

For this work defendant refused to make payment on any basis other than the unit prices set forth in the bid schedule for excavation for headworks, regardless of the character and cost of performing such work. The additional rock excavation involved in fulfilling this requirement totaled 2,089 cubic yards, of which 1,664 cubic yards necessarily (for reasons shown in findings 9 and 10) involved subaqueous excavation, the cost of performing which was greatly in excess of the unit prices fixed in the bid schedule for rock excavation for headworks. Of this 1,664 cubic yards, 115 cubic yards, while originally above water so as not to require underwater drilling, had to be blown into the water and excavated therefrom along with the subaqueous rock, by means of a dragline (finding 17), and, therefore, while not as costly to perform as the balance of the 1,664 cubic yards which had to be drilled under water, was more difficult and more expensive to remove than dry rock excavation.

The contractor, in his petition, asked that in order to be reimbursed for costs and given a fair price for such work he be paid an additional $15 per cubic yard for this subaqueous excavation work over and above the $1.25 per cubic yard, which was paid to and accepted by the contractor under protest.

Defendant bases its opposition to the allowance of any recovery on this item of claim upon the sole ground that the work in question was a specified part of the contract work for which the contract fixed a unit price of $1.25 per cubic yard. The further contention is made that in any event the reasonable cost and price for the subaqueous excavation did not exceed $4 per cubic yard.

The question whether the excavation performed for a distance of 100 feet upstream from station 28 + 24 was part of the contract work to be paid for at the unit price of $1.25, turns principally upon the meaning to be given to the final clause of the opening sentence of paragraph 47 of the specifications, which reads:

Excavation for headworks.—The items of the schedule for excavation for headworks include all excavation upstream from a vertical plane normal to the center line of the canal at station 32 + 63.94 required for the construction of the headworks, including the excavation of the approach channel to the trash rack and fish-screen portion of the structure.

Defendant's contention is that this mention of an "approach channel" in the specifications, taken in conjunction with what it says was an indication on Drawing No. 3 (finding 8) that further excavation of an unspecified extent upstream from station 28 + 24 would be necessary in order to furnish a complete and adequate channel from the river capable of carrying water in sufficient quantity to satisfy the capacity of the canal, clearly indicated a

definite requirement that such an approach channel was to be constructed out into the river by the present contractor as a part of his work under the contract.

We are unable to agree with this conclusion. In our opinion such work was neither expressly nor impliedly called for by the contract.

 It may be conceded that in its ordinary and accepted meaning the term "approach channel," standing alone, denotes a channel from a source of supply capable of supplying the capacity of the structure which it serves to connect. However, we are not here dealing with the ordinary meaning of "approach channel" but with the question of what it meant in this contract. Rocky Mountain Fuel Co. v. Albino Realty Co., 10 Cir., 70 F.2d 212, 215; Pfotzer v. United States, Ct.Cl., 77 F.Supp. 390, and cases therein cited. For our present purposes, the meaning must be determined from the context in which the term is used, and from other portions of the contract documents wherein the work to be performed under the contract is specifically defined or otherwise indicated.

It may be observed that paragraph 47 does not undertake to describe the scope of the work. The sentence in which the term "approach channel" is used speaks of it as "the approach channel," indicating that the scope or detail of this part of the headworks has been disclosed elsewhere in the specifications or drawings. We think it is reasonably clear that the "approach channel" referred to was the portion of the canal between the headworks and station 28 + 24, as shown on the drawings. The entire sentence is concerned, not with a description of what shall comprise the headworks portion of the canal, but with a designation of that work for which the unit prices of 40 cents and $1.25 (excavation, common, for headworks, and excavation, rock, for headworks, respectively) shall furnish the rate of compensation.

 As previously noted it is paragraph 17 of the specifications that sets forth "the requirement" of the contract with respect to the work to be performed. Station 28 + 24 is there clearly and definitely designated as the upper extremity of the work. The first drawing to which paragraph 17 makes reference, to wit, the location map, by means of an arrow drawn between stations 110 + 00 and 28 + 24, and labeled "Schedule" provides, we think, a reasonable and accurate means of definition for "the approach channel to the trash rack and fish screen portion of the structure," which is referred to in paragraph 47 as being included in the excavation for headworks for the purpose of payment at the applicable unit prices set forth in the bid schedule (finding 6). It is, at the very least, a fair and reasonable interpretation of this language that it had reference, as above-stated, to the 34 feet of channel which was to be constructed upstream from station 28 + 58, where the headworks proper terminated. The contractor so interpreted the contract documents in making his bid. Without such language it might have been argued that the higher unit price for headworks excavation did not apply to this 34-foot section, since the latter did not require excavation for concrete structures such as was true of the section of the canal from station 24 + 58 to station 32 + 63.94. If there is any doubt that such was the full intent of the language in question, which we are unable to concede in view of the many facts which support the conclusion we have reached (findings 6 to 12, both inclusive), nevertheless it has been for many years the rule in cases such as this that "doubtful expressions should, therefore, according to a well-known rule, be construed most strongly against the party who uses the language." Garrison v. United States, 7 Wall. 688, 690, 19 L.Ed. 277; Gibbons v. United States, 15 Ct.Cl. 174, 192; Callahan Construction Co. v. United States, 91 Ct.Cl. 538, 611, 612.

The contractor should not be held to have known or suspected that the representatives of the Government who drafted the specifications may have intended, without expressing it, to interpolate some such amplifying expression as "from the bed of the river" between the words "approach channel" and the words which followed. Ruff v. United States, 96 Ct.Cl. 148, 164; Loftis v. United States, Ct.Cl. 76 F.Supp. 816. Nor do we find in the fact that one

in the position of the contractor might reasonably observe from the drawings and the physical conditions that further excavation beyond station 28 + 24 would be required to be done by some one at some time before the canal would be a complete and properly operable structure, any compulsion for giving to the term "approach channel" the meaning for which defendant contends. If any implication might be drawn from a cursory and detached reading of the language of paragraph 47 and the above-mentioned disclosure in the drawings that the contractor was to perform further excavation beyond station 28 + 24 as part of his work under the contract, that implication would be dispelled upon the observation of the further disclosure in the drawings and specifications and other contract documents connected therewith, that the character of the units of work and quantities listed in the bid schedule attached to the specifications related only to the kinds and qualities within the confines of stations 110 + 00 and 28 + 24, and that no provision was made in the schedule of unit prices for payment for the quantity and quality of excavation that would be required to carry the full width of the canal channel 100 feet beyond station 28 + 24 to the bed of the river (findings 6 and 11).

It follows from what we have said that no sufficient basis exists in the contract documents to support the Government's contention that the work which the contractor was ordered to perform and which he did perform beyond station 28 + 24, was intended as a part of the work required of him under the contract. The approach channel mentioned in paragraph 47 of the specifications is adjudged to have had reference to that portion of the channel lying between the trash rack at station 28 + 54 and a vertical plane normal to the center line of the canal at station 28 + 24.

Shortly after the contractor commenced work on the contract, defendant's inspector on the job told the contractor, in April 1941, that the approach channel would have to be continued, and excavated by him, approximately 100 feet beyond station 28 + 24. The doing of this work as part of the contract requirement was protested by the contractor and he requested written instructions and an order for the work above said station. No written instructions or decision having been given pursuant to his request, and defendant's acting construction engineer having, in the meantime, orally confirmed the inspector's directions, the contractor shortly thereafter, on April 28, and within 10 days, mailed a written protest to defendant's construction engineer, in overall charge of the project as the representative of the contracting officer, stating as the basis of his objection that the work above and beyond station 28 + 24 was not part of the contract and that "of course I will expect it to be handled accordingly."

No response was made to this letter, nor was any written instruction or decision regarding his protest ever given to the contractor by the inspector or the engineer prior to completion of all the work performed on the project by the contractor.

 There is a direct conflict in the testimony of the contractor and his witnesses and some of the defendant's witnesses relating to the contractor's oral request for written instruction, first by his superintendent and later by Orino himself. The proof in the case was taken before Orino's death. We have carefully studied the testimony and the circumstantial evidence and facts and we are convinced beyond all doubt that plaintiff and his superintendent firmly and vigorously protested the directions that this work was to be done under the contract, and that they not only requested of defendant's inspector and certain of its engineers written instructions at the time but repeated such request. We are likewise convinced that plaintiff was told and otherwise led to believe that such written instructions would be forthcoming. In addition, plaintiff shortly after the verbal orders to do this work had been given, wrote defendant's construction engineer a letter of protest on April 28, 1941, which called for and required written instructions or decision. Under the circumstances and in view of plaintiff's protests, honesty and fair dealing should have prompted the inspector to promptly put his instructions in writing. Under paragraph 14 of the specifications it was expressly made the duty of

944

defendant's chief inspector to put his verbal instructions and ruling into writing when plaintiff protested and asked for such written instructions. It was not necessary under this paragraph for plaintiff to make this request in writing, but when such instructions were not forthwith delivered plaintiff did write the letter above-mentioned.

Paragraph 14 provided: Protests.—If the contractor considers any work demanded of him to be outside the requirements of the contract, or considers any record or ruling of the contracting officer or of the inspectors to be unfair, he shall, immediately upon such work being demanded or such record or ruling being made, ask for written instructions or decision, whereupon he shall proceed without delay to perform the work or to conform to the record or ruling, and, within ten (10) days after date of receipt of the written instructions or decision, he shall file a written protest with the contracting officer, stating clearly and in detail the basis of his objection. Except for such protests or objections as are made of record in the manner herein specified and within the time limit stated, the records, rulings, instructions, or decisions of the contracting officer shall be final and conclusive.

█ Written protest was required only after the written instructions had been given. The contractor and his superintendent were familiar with the provisions and requirements of the contract and specifications. They had copies of the contract documents on the job and they were examined in connection with the matter in dispute. Plaintiff was an experienced contractor and he made special trips to the project at the request of his superintendent in connection with the inspector's instructions. In view of the nature and cost of the work involved in the inspector's ruling, which was approved by the acting construction engineer, and the lack of any reasonable disclosure or requirement in the contract that it was a part of the work to be performed by Orino, it would be unreasonable to suppose that an experienced contractor would fail to protest and ask for written instructions. It is admitted that plaintiff did protest (the inspector says he protested weakly), but it is denied that he asked for written instructions. The testimony cannot be reconciled and under the well established rule of law applicable in such a situation, we accept as true the testimony of the contractor and his superintendent and reject that of defendant's witnesses on this point. We are convinced from a study of the entire record and the circumstantial facts that defendant's witnesses were never quite sure of the correctness of their ruling that the contract called for this work and required plaintiff to perform it, and that they hoped to force plaintiff to perform it for $1.25 a cubic yard relating to other and entirely dissimilar work. They showed evidence of being biased rather than frank and fair in their testimony and indicated a desire to sustain their ruling and avoid payment of a fair price on the basis of a technicality.

The witnesses called by defendant testified that they had no knowledge of the contractor's letter of protest of April 28, 1941 (finding 15), until plaintiff filed his claims upon completion of the work. We are convinced that the letter to the construction engineer was written, properly addressed and duly deposited in the post office at Bend, Oregon, and that it was delivered by the post office to some one for the Bureau of Reclamation Office at that place. It is not necessary for us to decide what happened to it after its receipt from the post office. We are satisfied that it did not come to the attention of construction engineer Dean S. Stuver, who was the authorized representative of the contracting officer. He had about twelve people employed in his office, including a resident engineer, a field engineer, an office engineer and the chief inspector. The letter is not of primary importance here, since the contract did not require that it be written at that time, and we think it was written as a precaution because plaintiff did not trust the good faith of the inspector. There is evidence of animosity on the part of defendant's inspector toward the contractor after the dispute concerning the work above station 28 + 24 arose.

If this matter had been properly handled by Stuver's engineers and inspector the

contracting officer would either have issued a change order fixing a price under Article 3, or he would have rendered a decision denying such change order, and the ultimate result, in the latter event, doubtless would have been the same as that which occurred.

In the circumstances the contracting officer and the head of the department were right in considering plaintiff's claim on its merits before final settlement, as authorized by Article 3 of the contract. They were, when they considered the claim, still in a position to issue a change order and make additional payment thereunder.

The defendant was not harmed or prejudiced by the failure of certain of its officers to perform in good faith the duty required of them, and plaintiff is, in the circumstances, relieved from the possible effects of the procedural irregularities, which were due to such failure on their part.

There was included in the decisions of the contracting officer and the head of the department a statement that the contractor did not ask for written instructions and did not make a written protest. While they did not base their decisions on that ground but denied the claim on their opinions as to what they thought was the proper interpretation of the contract documents, it should be stated that on the record we find those statements to be entirely unsupported and arbitrary. The defendant rightly says that the decisions on the merits are not conclusive under Article 15 of the contract. See Pfotzer v. United States, Ct.Cl., 77 F.Supp. 390.

A few days after the above letter of April 28 was mailed, the contractor commenced drilling under water upstream from station 28 + 24, and within the contract completion date, as extended, excavated a river channel to substantially bottom grade of the canal for a distance of approximately 100 feet upstream from station 28 + 24. In paying the contractor for the 2,089 cubic yards of rock removed therefrom, defendant offset against this 2,089 cubic yards 598 cubic yards of silt and other material which, following the removal of the cofferdam employed by the contractor to unwater the headworks, remained above the grade called for by the contract in the bottom of the channel between station 28 + 24 and the concrete headworks (finding 17). This left a net quantity of 1,491 cubic yards for which defendant paid the contractor the $1.25 per cubic yard rate provided in the unit price schedule for dry rock excavation for headworks. In accepting this payment the contractor renewed his protest and reserved the right to make and further prosecute the claim, which he did following completion of all the work, first to the contracting officer and thereafter to the head of the department (finding 26). In each instance his claim for an additional $15 per cubic yard for all subaqueous rock excavation removed upstream from station 28 + 24 was rejected, and the claim disallowed in full. As above indicated, we are of the opinion that the construction placed upon paragraph 47 of the contract specifications by these administrative officers, as well as by the Government's representatives directly in charge of the project work, was erroneous, and that compensation for the subaqueous rock excavation in question was not properly measured by the unit price applicable to dry rock excavation downstream from station 28 + 24, which substantially involved dry excavation.

Plaintiff is entitled to recover the fair price, including overhead and profit, for the performance of this item of work. We have found the fair and reasonable price and cost to be $16.25 per cubic yard for the 1,549 cubic yards of subaqueous excavation which originally lay under water, and $8 per cubic yard for the other 115 cubic yards which was unavoidably blown into the water and excavated along with the subaqueous rock by means of a dragline, making a total of $26,091.25. A part of this total price has already been paid to plaintiff by virtue of the payment, hereinbefore mentioned, for 1,491 cubic yards of excavation at the rate of $1.25. The amount of 425 cubic yards of that quantity was for rock excavation removed above station 28 + 24 by power shovel in the dry (finding 17), as to which excavation there is no dispute between the parties as to the proper rate for payment. This leaves 1,066

cubic yards at $1.25, or $1,332.50, as the amount which defendant has already paid to plaintiff on account of the 1,664 yards of subaqueous excavation, and $24,758.75 ($26,091.25—$1,332.50) as the unpaid balance. Against this resulting figure defendant is entitled to a credit for the 598 cubic yards of silt and other material left in the approach channel after removal of the cofferdam, computed at the rate provided in the contract for excavation in the area of the canal where this material was left, to wit, $1.25 per cubic yard or $747.50. The net amount for which plaintiff is entitled to judgment on this item of claim is, therefore, $24,011.25.

In paragraphs V and VIII of the first cause of action in the petition the quantity and the total amount claimed to be due therefor were understated and the request of plaintiff to be allowed to amend the petition to conform to the proof is allowed.

### Items 2 and 3. Claim for $12,941.44 for Excavation and Claim for $4,500 for Placing Certain Concrete.

The findings relating to these items of claim show that the contractor excavated 16,176.8 cubic yards of rock beyond the neat lines of the side walls of the unlined canal section, for which he claimed 80 cents a cubic yard, and placed concrete to the extent of 101.8 cubic yards below the neat lines of the foundation subgrade, in monoliths with the concrete for the headworks, for which he claimed $15 a cubic yard, and that plaintiff has not been paid anything for such work.[1] Defendant concedes these facts to be correct but contends that with respect to such work performed by the contractor he was required by defendant to do no more than the contract called for; that the contract does not provide for payment for the work in question, and that it has not been shown that such work should be paid for as an extra.

█ The facts disclose that the contractor protested the decision that he was not entitled to payment but there is no claim that he requested written instructions or decision regarding the excavation and concrete work in question. He did not make a written protest that such work involved a change in the plans or specifications or was work outside that called for by the contract. No written order was issued by or demanded of any representative of the Government authorized to alter or add to the contract price regarding the work on which these two items of claim are founded. In order for plaintiff to recover it must appear that there was no occasion for protest by the contractor against being required to do such work nor any reason why the contractor should have insisted upon written instructions or order for the same as though it involved extra work; in other words, that the work involved in these two items of claim was regular contract work for which, upon performance thereof, the contract expressly promised payment at the applicable unit prices provided therein.

Plaintiff, in fact, does not contend that recovery may be had on these items of claim either as a change in the plans or specifications calling for an equitable adjustment of the contract price, or as an extra for which defendant should be held to have impliedly promised to pay the contractor the fair value thereof. On the contrary plaintiff contends that the work performed for which additional payment is claimed was work within the letter of the contract specifications, for which it has not been paid the applicable unit prices therein provided for such work. The question is, therefore, whether the rock excavation and the concrete work in question fell within the work for which defendant undertook and agreed to pay such unit prices.

The rock excavation will be first discussed. The entire 16,176.8 cubic yards in question was removed from beyond the neat lines of the side walls of the unlined canal section. It was comprised of overbreak, and of loose rocks of various sizes, extending beyond the neat lines of the side walls and liable to fall into the canal, which resulted normally from the contractor's blast-

---

[1] In view of our conclusion, hereinafter stated, on these claims it is not necessary to discuss plaintiff's contention that the figure of 101.8 cubic yards should be 300 cubic yards, other than to state that we find no basis for disturbing the finding of the court's Commissioner with respect to the amount of concrete so placed.

ing and shovel operations in the type of rock through which the canal was excavated, notwithstanding these operations were performed in a satisfactory and workmanlike manner. The 16,176.8 cubic yards removed from beyond the neat lines also included an undetermined quantity of loose material present along the seams in the rock, which was not overbreak from the rock itself (finding 21).

Paragraph 36 of the specifications, entitled "Canal sections," in part, provides that the canal shall be excavated to the full depth and width required, and finished to the prescribed lines and grades in a workmanlike manner; that, where not to be covered with concrete, sharp points of undisturbed ledge rock will be permitted to extend into the prescribed prism not more than six inches; and that above the water line rock will be allowed to stand at its steepest safe angle and no finishing required other than the removal of rock masses that are loose and liable to fall.

The contractor was required by defendant to remove the loose rock and overbreak referred to above, but it does not appear that he was directed to remove any rock from outside the neat lines which was not loose and not liable to fall into the canal. If the removal of the loose material from along the seams was something more than what was reasonably required of the contractor by the provisions of paragraph 36 of the specifications, which we need not decide, the fact remains that it has not been shown that any written protest was made to the doing of it, nor even that defendant ordered it done. With respect to the loose rock and overbreak which defendant directed the contractor to remove, it appears that this was work clearly called for under the specifications.

Was this a part of the excavation required by the contract to be paid for at the agreed unit price of 80 cents per cubic yard? In the latter portion of paragraph 36 of the specifications it is expressly stated that "Except as otherwise herein provided, measurement, for payment, of excavation for canal will be made to the neat lines only as shown on the drawing or as established by the contracting officer." This, we think, is a clear warning to the contractor that he should not expect to have included in the excavation for which the unit price would be paid such excavation as might be necessary outside the neat lines in order to finish the canal to the prescribed lines and grades in a workmanlike manner and to remove rock masses liable to fall into the canal; and that such expense as he might encounter in that connection should be figured in his unit price bid for excavation within the neat lines.

Plaintiff argues, however, that in view of the words "except as otherwise herein provided", which qualify this provision, the contractor was entitled to expect that payment for such work would be paid for as a matter of course under the first portion of paragraph 36, which reads: Canal Sections.—The canal sections are shown on the drawings, but the undetermined stability or porosity of the material in which these sections will be constructed and which will form the canal banks, or other causes, may make it desirable during the progress of the work to vary the slopes of the earth sections or the slopes of embankments and the dimensions dependent thereon. Any increase or decrease of quantities excavated as a result of such changes will be covered in the estimates. * * *

The evidence shows, and we have found (finding 21), that notwithstanding the satisfactory and workmanlike manner in which the contractor performed his blasting and shovel operations the seamy nature of the basalt formation in the canal area, and its tendency to break into blocks of various sizes, made it impossible to excavate the canal to the prescribed neat lines and within tolerances permitted by the specifications without overbreak and without leaving loose blocks or pieces liable to fall into the canal. Plaintiff contends that the existence of these facts with respect to the stability and porosity of the material in which the canal was constructed made it encumbent upon defendant to cover in the estimates for payment the material removed by the contractor from outside the net lines of the walls of the canal.

We are unable to give such meaning to the language in question. To

do so would require enlarging its meaning beyond what it plainly expresses. The increases or decreases in quantities, which it states will be covered in the estimates, are specified as those which may result from a variation of the slopes of the earth sections or the slopes of embankments and the dimensions dependent thereon. At certain places below station $32 + 63.94$ defendant did change the slopes because of the loose nature of the material being excavated (finding 21), and it is not claimed that defendant has failed to pay for any additional quantities which may have resulted from such changes. The excavation for which plaintiff now seeks to be paid is of a different nature, as we have heretofore noted. In one instance payment is expressly promised, but in the other it is not. Each portion of paragraph 36, above discussed, is capable of being understood without reference to the other. We may not read the two parts as one so as to impute to the provision for removal by plaintiff of rock masses, loose and liable to fall, an undertaking by defendant to pay found only in the provision respecting changes which the defendant may find it desirable to make. This is true even if we concede, as plaintiff suggests, that the removal of loose rock liable to fall, from outside the neat lines, has the practical effect of changing the slopes. Except with respect to additional excavation resulting from changes in the slopes, which defendant may decide to make, paragraph 36 of the specifications expressly restricts the contractor's pay to excavation within the neat lines. Cf. Ford v. United States, 17 Ct.Cl. 60, 82, where it was said: "If the contract had bound the claimants to construct a canal according to a certain plan, or to excavate rock and earth down to a certain line, there would be little doubt that their pay must stop when that line was reached, and that excavation below it was an expense incident to the prosecution of their work." See also Pope v. United States, 76 Ct.Cl. 64, 79-82.

We conclude that plaintiff is not entitled to recover for the excavation which forms the basis of the second item of claim.

■ The next item of claim relates to 101.8 cubic yards of concrete placed below the neat lines of the foundation subgrade in the concrete headworks, for which plaintiff says payment of $4,500 should be made. The necessity for this work arose out of the removal by the contractor of soft rock encountered at or near the final grade line, and which was unsuitable as a foundation for concrete structures. The contracting officer directed that this soft rock be removed to the extent necessary to reach solid foundation. As a consequence, material was removed from below the specified neat lines of the foundation subgrade. The removal of this rock is not in issue. No suitable material, such as gravel, being available for the purpose of backfilling the depressions thus occasioned, the contractor asked and was given permission to backfill such areas to subgrade with concrete. This request is understandable in view of the fact that under paragraphs 23 and 76 of the specifications, the Government was to furnish without charge to the contractor such materials as cement, sand, and broken rock or gravel for use in concrete. Defendant furnished the necessary materials for the concrete but declined to permit the concrete to be placed separately as backfill, directing that the concrete placed below the subgrade be poured in monoliths with the concrete in the structures so as to avoid leaving a seam into which water might enter and damage the structures by freezing or by hydrostatic pressure. We have found that the quantity of concrete placed by the contractor below subgrade in the manner directed, so as to fill the depressions resulting from removal of the soft rock, was 101.8 cubic yards. The defendant's directions as to how the concrete should be poured were proper and plaintiff was apparently satisfied with the entire matter at that time. As hereinbefore stated defendant issued no written order covering this work. There was no request for written instructions nor any protest against placing the concrete. No question was raised by the contractor respecting payment for the placing of the extra concrete until after the entire contract work had been completed. The claim was denied.

The schedule of quantities and unit prices accompanying the specifications contains an item for rock backfill at 75 cents per cubic yard (as contrasted with the unit price of

$15 per cubic yard which plaintiff seeks to recover). However, neither in the specifications covering excavation for headworks (paragraph 47) nor in those respecting the placing of concrete (paragraph 70), and the measurement of concrete (paragraph 75), is there to be found any indication, express or implied, that the contractor would be required, either without additional compensation, or at the abovementioned rate for backfill, to install backfilling below the subgrade for headwork structures, ordered by the contracting officer, to replace material not suitable for a foundation for the concrete structures, and where the need for such work was not attributable to the contractor's careless operations. It is obvious, however, that backfilling was necessary, whether of gravel or concrete. Apparently the contractor was paid for the excavation and since he was permitted to use concrete for the backfill he was satisfied at the time.

The testimony indicates that the manner in which it was necessary for the contractor to place the reinforcement for the concrete below subgrade with that for the structure concrete, added to some extent to his labor and material costs, but the claim is not based on that ground and we must take the claim as it comes to us. Plaintiff recognizes this, and, being aware that the claim cannot otherwise be allowed because of failure to comply with the requirements of the contract regarding protest, etc., predicates the right to recover upon the ground that the installation of the 101.8 cubic yards of concrete below subgrade in monoliths with the concrete of the structures, and under such circumstances as we have set forth in finding 24, constituted a change by the defendant in thickness of concrete shown on the drawings within the meaning of paragraph 75 of the specifications, so as to make immaterial the absence of any protest, written instructions or written order covering performance of said work. The portion of paragraph 75 relied on states that "Any thickness of concrete shown on the drawings may be changed by order of the contracting officer, in which case the changed thickness will be used as the basis of measurement for payment."

If included in the measurement of concrete under paragraph 75, the 101.8 cubic yards placed below the neat lines would come under the $15 per cubic yard rate provided by paragraph 76 of the specifications and Item 16 of the bid schedule.

It is obvious that the contracting officer was not concerned with the matter of changing the thickness of the concrete base of the headwork structure, as shown on the drawings, either when he directed that the soft rock be removed from below the neat lines of the foundation subgrade, or when he permitted concrete to be used for backfill on condition that any concrete so placed by the contractor below such subgrade be poured in monoliths with the concrete work immediately above. The contracting officer did not order a change in the thickness of concrete shown on the drawings, in the sense in which this expression was used in paragraph 75, notwithstanding compliance by the contractor with the method of pouring exacted by defendant, as a condition under which the depressions might be filled to subgrade with concrete, had the effect of increasing the thickness of the concrete structure at those points. We are of the opinion that paragraph 75 is not applicable to the instant claim, and that plaintiff is not, therefore, entitled to recover any sum for the placing of concrete below the neat lines in the headworks section.

Judgment will be entered in favor of plaintiff for $24,011.25. It is so ordered.

JONES, Chief Justice, and HOWELL, MADDEN and WHITAKER, Judges, concur.